224 N.J. Super. 704 (1988)
541 A.2d 280
RWB NEWTON ASSOCIATES, PLAINTIFF-RESPONDENT,
v.
ELLEN GUNN AND GERALD SLIKER, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 12, 1988.
Decided May 9, 1988.
*706 Before Judges PRESSLER and SKILLMAN.
Diane K. Smith argued the cause for appellants (Somerset Sussex Legal Services, attorneys; Diane K. Smith, on the brief).
Gerald R. Bouchal argued the cause for respondent.
The opinion of the court was delivered by SKILLMAN, J.A.D.
Defendant Ellen Gunn entered into a lease of an apartment from plaintiff for a term running from August 16, 1986 to July 31, 1987.[1] The lease incorporated rules and regulations regarding the tenant's occupancy of the premises, including requirements that she keep the premises in a "clean and safe" condition, that she conduct herself "in a manner that will not disturb [her] neighbor's peaceful enjoyment of the premises," and that *707 she "[u]se balconies in the demised premises only during reasonable hours and only for regular sitting purposes."
On April 29, 1987, plaintiff sent a notice to Gunn stating:
This is to notify you that because of the filthy condition of your apartment, the fact that your friend, Gerald Sliker, frequently has been seen drinking on the terrace in the company of male friends and has been shouting obscenities at you in the parking lot from the balcony of your apartment, and the further fact that you have two additional people living in your apartment, all in violation of the terms of your lease, your lease will not be renewed on its expiration date, July 31, 1987.
On May 12, 1987, a staff attorney with Somerset Sussex Legal Services wrote a letter to plaintiff on behalf of Gunn, stating that she denied violating the terms of her lease.
On June 19, 1987, plaintiff wrote a letter to Gunn's attorney stating:
Following our last telephone conversation and upon complaint of roach infestation emanating from Apt. 9-R, I had the exterminator in to "bomb" Apts. 7-R, 7-S, 8-R, 8-S, 9-R, 9-S, 10-R and 10-S. I had hoped that this would at least temporarily clear up the condition but I did receive a telephone call on June 16th from Roberta Blair, the tenant in Apt. 10-R, who advised me that the situation still persists....
In addition to my previous complaints, I have this morning, received information pertaining to Mr. Sliker, reports of numerous assaults and battery, disorderly persons, thefts, drunk driving and driving while a license has been suspended....
In any event, it would appear that we made a serious error earlier in the year in formally accepting the fact that Gerald Sliker was living with Ellen Gunn and accepting his tenancy on that basis.
It certainly appears that he is not the kind of person that we want at Brookside Terrace and for that reason as well as those stated in my letter of April 29, 1987, we are not going to renew the lease of Mrs. Gunn and Mr. Sliker which expires on July 31, 1987.
I hope you will agree that they should move out in order to avoid legal proceedings.
Defendants did not vacate the premises and on August 7, 1987 plaintiff filed this tenancy action. The complaint alleged that "[d]efendants have breached their lease with plaintiff in that they have maintained their apartment in a unclean and uninhabitable condition, have engaged in the consumption of alcoholic beverages on the balcony of their apartment and have further caused loud and profane language to be shouted in *708 public contrary to the rights and best interests of all other tenants in said apartment and failed and/or refused to cease said activities despite repeated requests of the landlord."
The case was tried in the Special Civil Part on August 24 and 25, 1987. At the beginning of the trial, plaintiff's counsel asked the court to decide whether plaintiff's letters of April 29, 1987 and June 19, 1987 satisfied the statutory requirements for notice of alleged violations of a landlord's rules and regulations. The trial court apparently ruled that the letters provided adequate notice and directed plaintiff to present its evidence in support of the complaint. This evidence consisted of testimony by plaintiff landlord's representative and various tenants who alleged that defendants' apartment was filthy and had caused roaches to infest the building, that foul odors emanated from defendants' apartment, that defendants were noisy, and that they consumed alcoholic beverages on their balcony and shouted obscenities. Gunn testified for the defendants and denied all of these allegations.
Following the presentation of evidence by the parties, the trial court stated that it had examined a court file in a case brought by the Division of Youth and Family Services against Gunn, in order to resolve the factual disputes between the parties. The court took judicial notice of certifications by two social workers contained in this file. These certifications indicated that defendants' apartment was extremely dirty and that on one occasion at least one hundred dead cockroaches had been found on the floor. The court found that these certifications were "relevant to the question whether or not Susan [sic] Gunn was being truthful when she testified to the Court that she's an immaculate housekeeper." The court then proceeded to find plaintiff's witnesses to be more credible than Gunn. Thus, the court concluded that defendants had violated the landlord's rules and regulations incorporated in their lease and directed that a judgment of possession be entered. Defendants appealed, and the trial court granted a stay pending appeal. We reverse.
*709 The Anti-Eviction Act, N.J.S.A. 2A:18-61.1 et seq., comprehensively regulates the grounds on which a residential tenant may be evicted and the procedures a landlord must follow before evicting a tenant. Unless the landlord demonstrates compliance with these statutory provisions, a judgment for possession may not be entered. N.J.S.A. 2A:18-61.3; see Georgia King Associates v. Fraiser, 210 N.J. Super. 146 (App.Div. 1986). The provisions of the Anti-Eviction Act apply not only during the term of a lease but also to nonrenewal of a lease. N.J.S.A. 2A:18-61.3(a); see Harden v. Pritzert, 178 N.J. Super. 237, 240 (App.Div. 1981).
One statutorily permissible grounds for eviction is that a tenant "... has continued, after a written notice to cease, to substantially violate or breach any of the landlord's rules and regulations governing said premises, provided such rules and regulations are reasonable and have been accepted ... by the tenant." N.J.S.A. 2A:18-61.1(d). N.J.S.A. 2A:18-61.2(b) also requires "[f]or an action alleging continued violation of rules and regulations under paragraph d ... one month's notice prior to the institution of the action for possession." Thus, four statutory preconditions must be satisfied before a dispossess action can be filed for a tenant's failure to comply with a landlord's rules and regulations: (1) the tenant must violate the landlord's rules and regulations; (2) the landlord must give the tenant a notice to cease the violations; (3) the tenant must continue to violate the rules and regulations after receipt of the notice to cease; and (4) the landlord must give the tenant a notice of termination one month before filing suit.
We reverse the judgment of possession entered in this case because plaintiff failed to serve a notice to cease upon defendants and thus failed to provide them with the opportunity to conform with plaintiff's rules and regulations. The April 29, 1987 letter to Gunn alleged various violations of the landlord's rules and regulations and then flatly stated that "your lease will not be renewed on its expiration date, July 31, 1987." The *710 June 19, 1987 letter to defendants' attorney also simply stated that "... we are not going to renew the lease of Mrs. Gunn and Mr. Sliker." Neither of these letters even suggests that defendants' tenancy would be continued if they ceased violating the landlord's rules and regulations. Hence, neither letter satisfies the requirement of N.J.S.A. 2A:18-61.1(d) that a tenant be given a "notice to cease" before being subject to eviction for violating a landlord's rules and regulations.
Although plaintiff's failure to provide defendants with a notice to cease requires reversal without more, we also find it necessary to comment upon the trial court's reliance upon certifications filed in another case in reaching its decision in this case. These certifications were not marked into evidence and are not included in the defendants' appendix. However, it is clear from the court's opinion that the certifications were signed by social workers who had visited defendant's apartment and allegedly found it to be extremely dirty. It is also clear that the court considered these certifications in order to resolve the critical factual dispute between the parties regarding the condition of defendants' apartment, even though the persons who signed the certifications did not appear at the hearing and therefore were not subject to cross-examination. Hence, the certifications were hearsay and inadmissible under Evidence Rule 63.[2]
The trial court stated that it could consider the contents of these certifications pursuant to Evidence Rule 9(2)(b), which permits a court to take judicial notice of "records of the court in which the action is pending." This reflects a fundamental misunderstanding of judicial notice. A court may take *711 judicial notice that a certification has been filed. In addition, a court can take notice of what is alleged in a certification, if the fact that the allegation has been made is itself relevant. However, a court may not take judicial notice of the contents of a certification for the purpose of determining the truth of what it asserts simply because the certification has been filed with a court and thus is part of a court record. The rules regarding judicial notice are designed solely to provide a speedy and efficient means of proving matters which are not in genuine dispute. See 9 Wigmore, Evidence (Chadbourn rev. 1981), § 2565-§ 2567a at 693-719. Therefore, these rules may not be used to circumvent the rule against hearsay and thereby deprive a party of the right of cross-examination on a contested material issue of fact. See People v. Rubio, 71 Cal. App.3rd 757, 139 Cal. Rptr. 750, 755-756 (Ct.App. 1977); cf. Evid.R. 63(3), which permits testimony in a prior proceeding to be admitted in evidence if a witness is unavailable to testify in a later proceeding, provided certain procedural safeguards are met.
For the reasons previously stated, the judgment of possession is reversed and the case is remanded to the trial court for entry of an order dismissing the complaint.
NOTES
[1] Defendant Gerald Sliker did not sign the lease. However, he moved in with Gunn during the term of the lease and thereafter plaintiff accepted Sliker's co-tenancy with Gunn.
[2] Defendants also argue that it was improper for the court to consider these certifications because they are records of the Division of Youth and Family Services which are required to be kept confidential pursuant to N.J.S.A. 9:6-8.10a. Since the certifications have not been furnished to us and the record does not indicate the circumstances of their submission to the trial court, we decline to consider this argument.